UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No.5:05-CR-285-BO
No.5:11-CV-565-BO

| | |
|---|---|
| AHMAD RASHAD TOMLINSON, )<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>Respondent. ) | O R D E R |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE 33]. The government has responded [DE 37], and Petitioner, through counsel, has replied [DE 40]. For the reasons discussed below, Petitioner's Motion is denied.

## BACKGROUND

Petitioner, Mr. Tomlinson, pleaded guilty pursuant to a plea agreement on January 17, 2006, to one count of conspiracy to distribute and possession with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 846. Mr. Tomlinson was sentenced on May 23, 2006, to a term of 180 months' imprisonment. Mr. Tomlinson did not file a direct appeal. Mr. Tomlinson now comes before the Court contending that, in light of the Fourth Circuit's holding in *United States v. Simmons*, he no longer qualifies for the career offender enhancement under U.S.S.G. § 4B1.1.

The government has responded to the instant motion, contending that Mr. Tomlison's

motion should be dismissed. The government argues that Mr. Tomlinson's motion is untimely and that Mr. Tomlinson in his plea agreement waived his right to contest his sentence in a post-conviction motion. Though the Court finds the government's arguments unpersuasive, Mr. Tomlinson's motion must still be denied.

## DISCUSSION

A one-year statute of limitations applies to § 2255 petitions, as set out in 28 U.S.C. § 2255(f). That provision provides that a petitioner may file his § 2255 petition within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C.§ 2255(f)(3).

### I. *Carachuri-Rosendo v. Holder* Is Retroactively Applicable On Collateral Review

In *Carachuri-Rosendo v. Holder*, the United States Supreme Court created a new rule that is retroactively applicable on collateral review. A rule is new if "the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989)(internal citation omitted). When a conviction is final, a "new rule" announced by the Supreme Court only applies if it is a substantive rule. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). A substantive rule is one that "decriminalize[s] a class of conduct [or] prohibit[s] the imposition of [certain] punishment on a particular class of persons." *Saffle v. Parks*, 494 U.S. 484, 494 (1990). These substantive rules are applied retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 352 (internal citation and quotation marks omitted).

In *Carachuri*, the Court created a new substantive rule that held that the term "aggravated

felony" in the INA no longer included state offenses that, though they could have been enhanced by a federal recidivist provision had they been federally charged, were not, in fact, so charged or enhanced. *Carachuri-Rosendo*, 130 S. Ct. at 2589. Therefore, going forward, a district court can only consider a penalty enhanced by a recidivism statute "when the [recidivist] finding is a part of the record of conviction." *Id.* at 2587 n.12. If that finding is not a part of the record of conviction, *Carachuri* holds that an individual has "not been convicted of a felony punishable under the Controlled Substances Act," and he remains eligible for cancellation of removal or waiver of inadmissibility under 8 U.S.C. § 1229b(a). *Id.* at 2589-90. In other words, the Court narrowed the scope of the INA by interpreting the term "aggravated felony" in 8 U.S.C. § 1229b(a) to decriminalize certain individuals who would otherwise have been aggravated felons under the INA–it altered the "the class of persons that the law punishes." *See Schriro*, 542 U.S. at 353; *United States v. Halstead*, 634 F.3d 270, 274 (4th Cir. 2011).

Because this Court holds that *Carachuri* is retroactively applicable to cases on collateral review, Mr. Tomlinson was statutorily entitled to file his petition within one year after the Supreme Court decided *Carachuri*–by June 14, 2011.

## II. *United States v. Simmons* Reinterpreted *Carachuri-Rosendo v. Holder* To An Extent That Requires Application of Equitable Tolling

The Supreme Court has held that a petitioner is entitled to equitable tolling if (1) he has been pursuing his rights with "reasonable diligence" and (2) some extraordinary circumstance prevented him from timely filing. *Holland v. Florida*, 130 S. Ct. 2549, 2562, 2565 (2010). The Fourth Circuit has defined "extraordinary circumstances" as (a) extraordinary circumstances, (b) beyond the petitioner's control or external to his own conduct, (c) that prevented him from filing on time. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004).

## A. Petitioner Has Pursued His Rights With Reasonable Diligence

As noted by the Supreme Court in *Holland*, "the 'flexibility' inherent in 'equitable procedure' enables courts 'to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct...particular injustices." *Holland*, 130 S. Ct. at 2563. Therefore, Mr. Tomlinson's reasonable diligence must be viewed in light of the profound change in circuit law effectuated by *Simmons*. Mr. Tomlinson made a first attempt to file his § 2255 petition on October 17, 2011, just two months after the en banc opinion in *Simmons*. Mr. Tomlinson corrected his mistakes in filing and filed a proper § 2255 petition on November 7, 2011. Although ignorance of the law, even in the case of an unrepresented prisoner, is not a basis for equitable tolling, *see Sosa*, 364 F.3d at 512, Mr. Tomlinson has pursued his rights diligently by attempting to obtain review in his case within a very short period after it became clear that his case was affected by *Simmons*.

Courts have held that opinions of the circuit court overruling prior circuit law can satisfy the "extraordinary circumstance" requirement. *See Burns v. Prudden*, 588 F.3d 1148, 1151 (8th Cir. 2009)(noting that the State failed to cite any authority for the proposition that "courts should demand pro se petitioners to anticipate that a court will overrule established law"). Mr. Tomlinson filed the correct motion within three months of the en banc decision in *Simmons*. In light of the unique circumstances of this case, Mr. Tomlinson has exhibited the requisite diligence to satisfy the *Holland* test.

## B. The Fourth Circuit's En Banc Opinion in *Simmons* Was An Extraordinary Circumstance Beyond Petitioner's Control That Prevented Him From Filing On Time

In this case, controlling Fourth Circuit precedent until the date the *Simmons* en banc opinion was issued–on August 17, 2011–provides the necessary "extraordinary circumstance"

required to justify equitable tolling. In order to understand the extraordinary nature of the change in law effectuated by *Simmons*, it is instructive to review the procedural history of the relevant cases.

Jason Simmons pleaded guilty to drug trafficking in federal court and was subjected to a sentencing enhancement under the Controlled Substances Act because the district court found that his prior state conviction for marijuana possession was for an offense "punishable by imprisonment for more than one year." The Fourth Circuit affirmed in an unpublished opinion. *United States v. Simmons*, 340 F. App'x 141 (4th Cir. 2009) ("Panel I"). The Supreme Court vacated that judgment and remanded the case to the Fourth Circuit for "further consideration in light of *Carachuri-Rosendo v. Holder*." 130 S. Ct. 3455. A panel of the Fourth Circuit held that *Carachuri* did not require a change in the previous holding. *United States v. Simmons*, 635 F.3d 140 (4th Cir. 2011) ("Panel II"). However, the Fourth Circuit voted to rehear the case en banc, and in a published opinion, the court of appeals vacated Mr. Simmons's sentence in light of *Carachuri*, holding that the opinion of the Supreme Court "clearly forelcose[d] reliance on *Harp*[1]." *Simmons*, 649 F.3d at 247.

*Carachuri* was an immigration case in which the Supreme Court was faced with the question of whether Mr. Carachuri-Rosendo was eligible to seek cancellation of removal or waiver of inadmissability. *Carachuri-Rosendo*, 130 S. Ct. at 2580. To answer that question, the Court first had to determine whether he had been convicted of an "aggravated felony" pursuant to 8 U.S.C. § 1229b(a)(3), which would bar that relief. An "aggravated felony" under the INA

---

[1] In *United States v. Harp*, the Fourth Circuit had held that "to determine whether a conviction is for a crime punishable by a prison term exceeding one year...we consider the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." 406 F.3d 242, 246 (4th Cir. 2005) (internal citation omitted).

includes, *inter alia*, felonies punishable under the Controlled Substances Act for which the "maximum term of imprisonment authorized" is "more than one year." 18 U.S.C. § 3559(a). Recidivist simple possession is punishable by up to two years of imprisonment, but "requires that a prosecutor charge the existence of the prior simple possession conviction before trial, or before a guilty plea. 21 U.S.C. §§ 844(a), 851(a)(1). Because Mr. Carachuri-Rosendo had been convicted of a state simple possession offense that, though it could have been charged in federal court as a felony, was not, the Court held that he had not been convicted of an aggravated felony. In so doing, the Court rejected the approach that would have allowed "hypothetical conduct" proscribed by a state statute to demonstrate that an individual could have been prosecuted for a felony in federal court. It held that the defendant must have been *actually convicted* of a crime that is itself punishable as a felony under federal law. The mere possibility that the defendant's conduct, coupled with facts outside the record of conviction, could have authorized a felony conviction under federal law is insufficient to satisfy the statutory command that a noncitizen be 'convicted of a[n] aggravated felony' before he loses the opportunity to seek cancellation of removal. *Carachuri-Rosendo*, 130 S. Ct. at 2589 (quoting 8 U.S.C. § 1229b(a)(3)).

Sitting en banc, the Fourth Circuit in *Simmons* interpreted *Carachuri-Rosendo* to compel the result that individuals sentenced pursuant to North Carolina's Structured Sentencing Act could not be classified as "felons" unless the individual defendant had been exposed to a sentence of imprisonment in excess of one year. 649 F.3d at 249. Under North Carolina's structured sentencing regime, felony sentences are contingent on the designated "class of offense" and the offender's "prior record level," which are each established by statute. N.C. Gen. Stat. §15A-1340.13(b). Once these two factors have been established, the sentencing judge matches the factors to a statutory table, which provides a presumptive range, a mitigated range,

and an aggravated range. N.C. Gen. Stat. §15A-1340.17(c). The presumptive range governs the sentencing unless the judge makes written findings that justify a departure to the aggravated or mitigated range. N.C. Gen. Stat. §§15A-1340.13(e); 15A-1340.16(c). Once the appropriate range has been determined, the defendant's minimum sentence must fit within that range. In *Simmons*, the Fourth Circuit held that the federal sentencing court looks to the "conviction itself" and, if the state sentencing court "never made the recidivist finding necessary" to expose the defendant to a higher sentence, the Government "cannot now rely on such a finding to 'set the maximum term of imprisonment.'" *Simmons*, 649 F.3d at 243 (citing *Carachuri-Rosendo*, 130 S. Ct. at 2587 n.12 (2010)).

The Fourth Circuit, sitting en banc, felt that *Carachuri*'s holding that the "actual recidivist finding...must be part of a particular defendant's record of conviction for the conviction to qualify as a felony," compelled its result in *Simmons*. *Simmons*, 649 F.3d at 244 (citing *United States v. Haltiwanger*, 637 F.3d 881, 884 (8th Cir. 2011)). However, a § 2255 petitioner would have had no such notice that the law applicable to his case had changed so dramatically: *Carachuri* squarely addressed itself to the immigration context and turned on whether the proscribed conduct of an individual's state offense could, hypothetically, have been punished as a federal felony. *Simmons* treated the question of whether North Carolina state criminal convictions were "punishable by a term of imprisonment exceeding one year" under existing *state* law. *Carachuri* looked to the underlying conduct and compared it to existing federal crimes. *Simmons*, by contrast, looked at the state *conviction* and determined whether a given crime was "punishable by a term of imprisonment exceeding one year."

The significant differences between these two cases was recognized by the Court of Appeals itself. The initial reviewing panel, on remand from the Supreme Court, held that

"*Carachuri-Rosendo* is inapplicable to our present inquiry...[because] the plain language of the immigration statute interpreted by the Supreme Court in that case differs in critical respects from the statute at issue in the criminal proceeding before us. Whatever the impact of *Carachuri-Rosendo* in other settings, it does not compel a different view of the plain language of §802(44)." *Simmons*, 635 F.3d at 145 ("Panel II"). The Fourth Circuit panel distinguished *Carachuri*'s inquiry as "defendant-specific" and its inquiry in *Simmons* as "offense-specific" because Simmons' case did not require a "hypothetical" inquiry into whether a state court prosecutor could have charged Simmons differently. *Id.* It was only six months later, sitting en banc, that the Fourth Circuit interpreted the old *Harp* rule to require consideration of "hypothetical aggravating factors" to calculate an individual's maximum punishment. *Simmons*, 649 F.3d at 244. It was only then that the Fourth Circuit held that *Harp* must be overturned.

To put it simply, any § 2255 petitions filed after *Carachuri* and before the en banc decision in *Simmons* would have been denied, as the district court would have been bound by the controlling Fourth Circuit precedent in *Harp*. It would be absurd to require a § 2255 petitioner to have forecasted the ultimate effect of *Carachuri* on Fourth Circuit interpretations of North Carolina state criminal convictions. Understanding that the clear and unambiguous law of this circuit, until August 17, 2011, dictated that *Harp* was controlling law, this Court holds that equitable tolling is warranted in this exceptional circumstance.

## C. This Holding Is Consistent With the Principle Announced in *Dodd v. United States*

In *Dodd v. United States*, the Supreme Court held that the date from which section 2255's period of limitations begins to run is the date on which the right is initially recognized by the Supreme Court, not the date on which the right is made retroactive. *Dodd*, 545 U.S. at 353, 354-55. Here, Mr. Tomlinson does not seek the benefit of a later date merely out of a claim that he was

unaware whether *Carachuri* would be retroactive on collateral review. Rather, he seeks the benefit of the date of the en banc decision in *United States v. Simmons* because it was not until that date that the Fourth Circuit determined the meaning of *Carachuri* for those convicted of North Carolina state crimes.

Following *Dodd*, the operative date for statute of limitations period purposes is the date of decision of *Carachuri*--June 14, 2010. However, this date must be equitably tolled until August 17, 2011, to account for the dramatic shift in controlling circuit precedent. Because Tomlinson filed his § 2255 petition within a reasonable period after the *Simmons* en banc decision, the Court holds that it was timely filed.

## III. Petitioner Did Not Waive His Right to File This Motion Because His Challenge Falls Outside the Scope of the Waiver

The Court conducted a Rule 11 colloquy with Mr. Tomlinson on January 17, 2006, during which Mr. Tomlinson confirmed that he plea was freely and voluntarily entered. Mr. Tomlinson's plea agreement does in fact provide for a waiver of all rights to contest the conviction or sentence in any post-conviction proceeding. Although a criminal defendant may waive his right to attack his conviction and sentence collaterally, *United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005), the Fourth Circuit has held that proceedings that affect constitutional rights and fundamental fairness fall outside the scope of such waivers. *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (sentence imposed in excess of maximum provided by statute or based on constitutionally impermissible factor like race falls outside the scope of an appeal waiver); *United States v. Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995) (challenges to the validity of sentences fall outside the scope of an appeal waiver where the challenge involves a claim that the sentence was illegal). This class of claims includes errors that the defendant "could not have reasonably

contemplated" at the time of the plea agreement. *United States v. Blick*, 408 F.3d 162, 172 (4th Cir. 2005). Whether a defendant was properly classified as a career offender in light of *Simmons* is such a claim–and is not barred by an appeal waiver, even if that waiver was knowing and voluntary. *United States v. Yancey*, No. 11-4792, 2012 WL 313752, at *1 (Feb. 2, 2012) (unpublished).

## IV. Petitioner Remains a Career Offender

Even in light of the foregoing, Mr. Tomlinson remains a career offender following *Simmons*. The career offender enhancement under U.S.S.G. § 4B1.1 applies when a defendant has two or more prior convictions of either a "controlled substance offense" or "crime of violence," each of which was "punishable by imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2(a).

Paragraphs 13, 17, and 19 of Mr. Tomlinson's presentence report contain convictions used to qualify Mr. Tomlinson as a career offender. The conviction listed in ¶ 13 would no longer serve as a predicate felony for the career offender enhancement after *Simmons* as it lists a class H felony criminal history category I and no findings of aggravating factors were made. Paragraph 17 lists two felony convictions that might serve as career offender predicate convictions: maintaining a place for controlled substances, a class I felony prior record level III; and sale of cocaine, a class G felony prior record level III. In those cases, the state court made findings of aggravating and mitigating factors, and Mr. Tomlinson received a consolidated sentence of ten to twelve months' imprisonment.

A class I felony combined with a prior record level of III results in a presumptive sentence range of five to six months, an aggravated range of six to eight months, and a mitigated range of four to five months; Mr. Tomlinson's conviction for maintaining a dwelling place for controlled

substances no longer qualifies as a predicate felony under *Simmons*. A class G felony combined with a prior record level of III results in a presumptive sentence range of thirteen to sixteen months, an aggravated range of sixteen to twenty months, and a mitigated range of ten to thirteen months. Accordingly, even with mitigating findings, Mr. Tomlinson was exposed to a sentence of more than twelve months' imprisonment on his sale of cocaine conviction listed at ¶ 17 of his presentence report.

Mr. Tomlinson appears to concede that the conviction listed at ¶ 19 of his presentence report remains a predicate felony for career offender purposes. However, while Mr. Tomlinson correctly notes that his conviction for maintaining a dwelling no longer qualifies, his conviction for sale of cocaine, a class G felony, does. Accordingly, Mr. Tomlinson has two predicate convictions and could appropriately be classified as a career offender.

The Court notes that while Mr. Tomlinson still could qualify for the career offender enhancement, such an enhancement was not applied at sentencing because his base offense level under U.S.S.G. § 2D1.1 resulted in a higher offense level. Mr. Tomlinson is therefore eligible to seek a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on the new retroactive amendments to the crack cocaine guidelines. However, as a § 3582 motion is not currently before the Court, the Court declines to consider whether Mr. Tomlinson might be eligible for such a reduction.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2255 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined Mr. Tomlinson is not entitled to relief and the government is entitled to dismissal of the petition, the Court considers whether Mr. Tomlinson is nonetheless

entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealabilty may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack*, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." *Slack*, 529 U.S. at 484-85.

After reviewing the claims presented in the petition in light of the applicable standard, the Court finds that reasonable jurists would not find the Court's treatment of any of Mr. Tomlinson's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

Accordingly, for the reasons discussed above, Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence is DENIED.

SO ORDERED, this, the 15 day of May, 2012.

*[signature]*
TERRENCE W. BOYLE
United States District Judge